USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/28/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

UNITED STATES OF AMERICA,

    -against-                                    02 Cr. 743-05 (CM)

THOMAS CARBONARO,

            Defendant.

----------------------------------------x

### DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASTIONATE RELEASE FILED PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) AND THE FIRST STEP ACT

McMahon, J.:

Thomas Carbonaro—a convicted Gambino Crime Family associate and soldier—is serving a 70-year prison sentence principally because he and others conspired to murder (and did murder) two individuals suspected to be Government cooperators, and because he also attempted to murder a third Government cooperator.

Before the Court is Carbonaro's motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)((1)(A) and the First Step Act. Carbonaro says that he is "fully rehabilitated and reformed and has disassociated himself with the criminal elements with whom he committed his offenses of conviction such that he no longer presents a threat to any individual or the community at large. He is, in other words, worthy and deserving of a 'second look.'" Carbonaro Motion, ECF #470, at 2.

Carbonaro argues that "'extraordinary and compelling reasons' – including his medical history and conditions, the COVID-19 pandemic and the more serious COVID-19 variants that

1

are prevalent throughout the United States (and, presumably, within the BOP's facilities, including FCI Allenwood – Medium, where Mr. Carbonaro has been incarcerated since April 2017) warrant a reduction of his 70 year sentence." *Id.* at 2-3. He asks that the Court reduce "his 70 year (840 month) sentence (of which he has already served 18 years (216 months)) to 25 years (300 months), or, alternatively, to a period of time shorter than 70 years (840 months) that this Court finds is fair, just, appropriate and consistent with the dictates of 18 U.S.C. § 3553(a)." *Id.* at 1.

The Government opposes the motion on the ground that there are no extraordinary and compelling circumstances warranting Carbonaro's release and because the Section 3553(a) factors also weigh heavily against his release. Government opposition, ECF #473, at 1.

Carbonaro's motion for early release is denied.

Background

In October 2004, Carbonaro was charged in a superseding indictment with, among other crimes, racketeering, in violation of 18 U.S.C § 1962(c), racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), conspiracy to commit murder, in violation of 18 U.S.C.§ 1959(a)(5), and Hobbs Act extortion, in violation of 18 U.S.C. § 1951.

The offense conduct stemmed from Carbonaro's participation in a conspiracy with members of the Gambino Crime Family to kill two individuals suspected to be government cooperators and an attempt to kill a third government cooperator that had testified against John Gotti, Sr., the Boss of the Gambino Crime Family. *See* PSR ¶¶ 17-51.

In or around 1990, individuals in the Gambino Crime Family began suspecting that Edward Garofalo, a Gambino associate and soldier, was cooperating with the Government. *See*

*id.* at ¶ 49. In response, Salvatore "Sammy the Bull" Gravano, the acting Underboss of the family, ordered that Garofalo be murdered. *Id.* Gravano selected certain members of his crew and other trusted Gambino members and associates, including Carbonaro, to be the "hit team" that would carry out the murder. *Id.* On August 8, 1990, just prior to the murder, the defendant and the rest of the hit team assembled to "clean their guns and get ready." *Id.* Later that evening, the hit team shot Garofalo to death, and the defendant—who had been waiting down the street in a decoy car—diverted the police away from the shooters after the murder by running a red light and ultimately receiving a traffic ticket. *Id.* at ¶ 50. The day after the murder, the hit team, including Carbonaro, gathered outside of Gravano's office and were congratulated by Gravano for committing the murder. *Id.* at ¶ 51.

Sometime in or around early 1998, the Carbonaro learned that an individual named Frank Hydell was potentially cooperating with the Government and providing information that could implicate Carbonaro's nephews in a murder and various bank burglaries. *Id.* at ¶ 45. In response, Carbonaro told Michael DiLeonardo, a ranking Gambino member, that Hydell was a "rat" that had to be killed. *Id.* at ¶ 46. Then, on or about April 28, 1998, Hydell was shot to death outside of a strip club. *Id.* Several years after the murder, the defendant told DiLeonardo that he was the driver "on that hit," that a member of Carbonaro's crew was "the shooter," and that Carbonaro's nephews were "in on the hit as well." *Id.* at ¶ 48.

In or around the summer of 1999—after Salvatore "Sammy the Bull" Gravano had testified against John Gotti, Sr., at trial and entered the witness protection program—a Phoenix newspaper published an article in which Gravano had taunted the Gambino Crime Family. *Id.* at ¶ 27. Peter Gotti (then the Acting Boss of the Gambino Crime Family) put Carbonaro and

3

another individual in charge of finding and killing Gravano. *Id.* at ¶ 28. The defendant took multiple trips to Phoenix in order to locate Gravano and attempt to kill him, and in doing so, used aliases and masked his appearance in order to avoid detection from law enforcement and Gravano. *Id.* At ¶¶ 29-36. Just prior to taking his third trip to Phoenix to kill Gravano, however, Carbonaro learned that Gravano had been arrested, and as such, the murder plot never materialized.   *Id.* at ¶ 34.

In addition to the murders and attempted murder, Carbonaro was also involved in loansharking and extortion on behalf of the Gambino Crime Family. *See id.* at ¶¶ 37-44; 52-53.

On December 22, 2004, Carbonaro was convicted after a nearly two-month jury trial of the charges described above.

On July 25, 2005, Judge Casey sentenced Carbonaro to 70 years' imprisonment.

On August 19, 2020, Carbonaro filed a *pro se* motion for compassionate release. *See* ECF No. 453. Shortly thereafter, he retained counsel, who informed the Court that counsel would be re-filing a motion on defendant's behalf. On May 10, 2021, counsel filed the instant motion arguing that Carbonaro has been "fully rehabilitated" and that his age and medical conditions, combined with the risks brought on by the COVID-19 pandemic, constitute "extraordinary and compelling circumstances" warranting his release. *See* Mot. 2-3.

Carbonaro is now 73 years old. His projected release date is March 15, 2063. (Bureau of Prisons (BOP) Inmate Locator).

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called

4

compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] Until recently, this Court—and many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[2] That changed on September 25, 2020, when the United States Court of

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g., United States v. Butler,* 970 F.2d 1017, 1026 (2d Cir. 1992).

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)  Medical Condition of the Defendant.—

    (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

5

Appeals for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling

---

(ii)   The defendant is—

   (I)    suffering from a serious physical or medical condition,

   (II)   suffering from a serious functional or cognitive impairment, or

   (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

circumstances.

<u>Carbonaro Has Exhausted His Administrative Remedies with the BOP</u>

On July 5, 2020, the defendant made a request for compassionate release to the Bureau of Prisons, which was denied on July 28, 2020. Carbonaro Motion, Exhibit 2. Accordingly, Carbonaro has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

<u>Present Motion Before the District Court</u>

Carbonaro claims that his age and medical conditions, combined with the risk of COVID-19 infection, counsel in favor of his early release.

The Court grants that Mr. Carbonaro, at 73 years of age, is not a well man. He suffers from a plethora of ailments attendant to the aging process: rheumatoid arthritis; osteoarthritis; asthma; anemia; hypoglycemia; and cataracts. He has had both of his knees replaced and has been approved for knee revision surgery on one of his knees. He suffers from hip joint pain that may require bilateral hip replacement. He has contracted and recovered from pneumonia and sepsis and lives with a "loop recorder" in his chest to monitor his heart.

While Carbonaro's age and medical conditions might arguably constitute extraordinary and compelling circumstances in light of the COVID-19 pandemic, Carbonaro has already contracted, and recovered from, COVID-19. And currently available evidence provided by the U.S. Centers for Disease Control and Prevention ("CDC") suggests that a prior COVID-19 infection likely provides protection against a subsequent reinfection, at least for 90 days, though determining the extent of protection provided by a prior infection is likely inexact.[3] But more

---

[3] CDC, Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19, February 13, 2021,

important than the defendant's recovery from his prior infection is that his BOP medical records reflect that Carbonaro received his first dose of the Moderna COVID-19 vaccine in May, with his second dose scheduled to be administered in June; presumably, Carbonaro is now (late July) fully vaccinated. According to the CDC, all vaccines authorized for use in the United States "have been shown to be efficacious and effective against SARS-CoV-2 infections, including asymptomatic infection, symptomatic disease, severe disease, and death."[4] Moreover, Carbonaro is housed at FCI Allenwood, a facility that currently reports no active cases of COVID-19 among inmates or staff.[5]

As for Carbonaro's medical condition (which the court concedes is not great), his BOP medical records reflect that he largely functions independently and is receiving appropriate medical treatment.

Accordingly, the defendant has failed to demonstrate that his current medical conditions present extraordinary and compelling circumstances warranting his immediate release.

Even if Carbonaro had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—counsel against a sentence reduction. Principal among those considerations in this case are "(1) the nature and circumstances of the offense and

---

https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration- isolation.html#assessment.

[4] CDC, *Science Brief: Background Rationale and Evidence for Public Health Recommendations for Fully Vaccinated People*, March 8, 2021, https://www.cdc.gov/coronavirus/2019- ncov/more/fully-vaccinated-people.html.

[5] Bureau of Prisons COVID-19 Dashboard https://www.bop.gov/coronavirus/ (last visited on July 28, 2021).

the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant.

Counsel argues that Carbonaro is a changed man who has renounced the criminal life he once led. "There is little reason for continuing to warehouse people like Mr. Carbonaro, who have been adequately punished by having served long prison terms, who have paid their 'debt to society' and who no longer pose a danger to any individual or the community– particularly if Mr. Carbonaro's sentence is reduced to 25 years. Doing so, at this juncture and under these circumstances, would not be and would not be regarded by any right-minded observer as a 'windfall' for Mr. Carbonaro." Carbonaro Motion, supra., at 40 (internal quotations and citation omitted).

But has Carbonaro really paid his debt to society?

Carbonaro was part of the notorious Gambino Crime Family. Prior to his conviction in the present case he collected "11 prior criminal convictions, most notably, three other federal convictions: Receipt of a Stolen Vehicle (SDNY - 1981); Theft from Interstate Shipment (EDNY - 1981); and Conspiracy to Commit Murder in Aid of Racketeering." PSR at 35. In the present case, he was convicted of conspiring to commit multiple murders. The offenses of conviction could not have been more serious. As Judge Casey explained at sentencing, "[t]he defendant has repeatedly shown his willingness to murder other human beings as part of his membership in an ongoing and widespread criminal enterprise, and his criminal history unmistakably demonstrates that he is unlikely to lead a law-abiding life if released from custody. Only the maximum penalty

that the law permits is sufficient in this case." (Sentencing Tr. at 9:13-22).

Carbonaro's Guidelines called for life in prison, but because of the statutory maximums, his exposure was capped at 70 years. Given the multiple lives taken at the hands of defendant and his co-conspirators, his involvement in loan sharking and extortion, and his extensive criminal history, the 70-year sentence imposed by Judge Casey was wholly appropriate—this Court will not disturb that sentence.

In sum, Carbonaro has failed to meet the substantial burden of showing extraordinary and compelling reasons for a reduction in his sentence, and, in any event, the Section 3553(a) factors weigh against granting such relief.

Carbonaro's motion for compassionate release is denied.

July 28, 2021

_____
Colleen McMahon
District Court Judge